UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LISA POLKINGHORN, as legal guardian and next friend of DAVID POLKINGHORN, § § § *Plaintiffs*, § § v. § § JAMIE LILES, § § *Defendant*. § | CIVIL ACTION H-17-3470 |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion for summary judgment filed by defendant Jamie Liles. Dkt. 8. In this motion, Liles argues that her position as a law enforcement officer entitles her to qualified immunity and as such, she is entitled to dismissal of the plaintiffs' complaint against her. Dkt. 8. Plaintiffs Lisa Polkinghorn and David Polkinghorn have requested that the court deny this motion. Dkt. 15. After reviewing the motion, the plaintiffs' response, the defendant's reply, and the applicable law, the court is of the opinion that the motion should be GRANTED.

**I. BACKGROUND**

David Polkinghorn is a mentally incapacitated 21 year old. Dkt. 1. Lisa Polkinghorn is his mother and legal guardian. *Id.* Jamie Liles is a State Trooper with the Texas Department of Public Safety. *Id.*

On May 3, 2017, David was driven by Lisa to Chick-Fil-A to pick up dinner. Dkt. 15, Ex. 1. Lisa waited in the car while David went inside. Dkt. 15, Ex. 1. Liles, who was on a meal break at a Chipotle location near the Chick-Fil-A, observed David enter the Chipotle and discard something into

the trash that looked black and plastic. Dkt. 8, Appx. at 4. Upon closer inspection, Liles discovered that it was a wallet accessory.[1] *Id.*

Liles found David's behavior suspicious, so she decided to follow him as he walked toward Chick-Fil-A. *Id.* While doing so, Liles observed something silver and shiny in David's right hand, which she believed to be a pocket knife. *Id.* As David entered the Chick-Fil-A, Liles could no longer observe whether it was still in his hand. *Id.*

Once inside, David approached the counter to place an order. *Id.* While placing his order, Liles observed David pulling out a stack of plastic cards from his pocket. *Id.* Due to her suspicions, Liles attempted to question David. *Id.* After briefly speaking with Liles, David tried to quickly walk away. *Id.* Liles then attempted to detain David by reaching for his arm, but he pulled away. *Id.* at 5. David then raised his left arm, faced Liles and said "I will beat you." *Id.* At this point, Liles took David to the ground. *Id.* While continuing to resist, David headbutted Liles in the face; in response, Liles struck him in the face with her hand. *Id.*

After several attempts and with the assistance of a customer and the manager of the restaurant, Liles was able to handcuff David, at which point other Department of Public Safety officers arrived. *Id.* While escorting David outside, the officers met with Lisa, who made the officers aware of his diminished mental capacity. Dkt. 15, Ex. 1. EMS then arrived to treat David for his injuries, which included a red bump on his forehead. *Id.*

---

[1] The "wallet accessory" was described as "a hard wallet type accessory used to hold credit cards/identification cards" in Liles's offense report. Dkt. 8, Appx. at 4.

David was then placed under arrest and searched. Dkt. 8, Appx. at 5. During the search, plastic gift cards and two pocket knives were allegedly found. *Id.* at 5–6. Following discussions with the District Attorney's office, David was not charged and was released. *Id.* at 6.

On November 13, 2017, the Polkinghorns filed a complaint against Liles alleging a violation of David's constitutional rights against unreasonable seizure through excessive force under the Fourth and Fourteenth Amendment. Dkt.1. They are seeking damages and attorneys' fees. *Id*. Liles's answer was filed on December 7, 2017. Dkt. 5.

On March 1, 2018, Liles filed a motion for summary judgment, asserting qualified immunity. Dkt. 8. The Polkinghorns' response was filed on March 30, 2018, and Liles's reply to that response was filed on April 12, 2018. Dkts. 15, 16.

## II. LEGAL STANDARD

### A. Summary Judgement Standard

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

**B.     Qualified Immunity Standard**

Qualified immunity shields officials from civil liability as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009)). "In order to overcome a qualified immunity defense, a plaintiff must *allege* a violation of a constitutional right, and then must show that 'the right was clearly established . . . in light of the specific context of the case.'" *Id.* at 181 (quoting *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014)).

Claims of excessive force during an investigation or arrest invoke the Fourth Amendment right against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865 (1989). To establish a claim of excessive force under the Fourth Amendment, the plaintiff must demonstrate: "(1) an injury, (2) which resulted directly and only from a use of force that was *clearly excessive*, and (3) the excessiveness of which was clearly *unreasonable*." *Pratt*, 822 F.3d at 181 (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). Determining the excessiveness of the force is a fact intensive inquiry. *Id.* Several factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).

### III. ANALYSIS

Liles is seeking a dismissal of the plaintiffs' claim on the ground that she is entitled to qualified immunity. Dkt. 8.

A.   **Arguments**

Liles argues that her initial detention and questioning of David was legal pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). Under *Terry*, "police officers may briefly detain a person for investigative purposes if they can point to 'specific and articulable facts' that give rise to reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime." *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017) (quoting *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014)). Liles points to David's discarding of the wallet accessory and his demeanor to support her reasonable suspicion that he may have stolen a wallet. Dkt. 8.

Furthermore, Liles argues that her use of force was objectively reasonable. *Id*. She cites David's attempt to pull away and his striking of Liles as evidence of reasonableness. *Id*. Additionally, she argues that there is no indication that she punched or kicked plaintiff.[2] *Id*. She also asserts that David's "alleged injury does not convert a reasonable use of force into an excessive one." Dkt. 8 (citing *Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989)).

In support of her argument, Liles cites *Poole v. City of Shreveport*, in which the court found that an officer's use of force was not excessive after he pushed an angry motorist against a truck and handcuffed him. 691 F.3d 624 (5th Cir. 2012). The court's conclusion was based on the fact that the motorist posed an "immediate threat to the safety of the officers" by raising his arms and resisting handcuffs. *Id*.

---

[2] While the motion states that "[t]here is no indication that Trooper Liles punched or kicked Plaintiff," the court notes that Liles's offense report states, "Due to Polkinghorn's head-butt to my face, I struck him in the face with my right hand in order to gain control of him and prevent him from injuring me." Dkt. 8, Appx. at 5.

5

In their response, the Polkinghorns argue that Liles's conduct 1) violated David's Fourth Amendment right against unreasonable seizure and 2) was objectively unreasonable in light of clearly established law at the time. Dkt. 15. Under the second prong, the Polkinghorns first argue that David's injuries are evidence of Liles's use of excessive force. Dkt. 15. They rely on *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998), which holds that "[i]n a claim for excessive force, the injury suffered by a Plaintiff must be more than *de minimis*." Dkt. 15. The Polkinghorns argue, however, that "it is not necessary that the Plaintiff show a 'serious injury' in order to prevail. *Id*. (quoting *Baldwin*, 137 F.3d at 839). The Polkinghorns further assert that "bruising," "swollen cheeks," and "psychological injuries," have sustained excessive force claims. Dkt. 15 (citing *Lincoln v. Turner*, 874 F.3d 833, 846 (5th Cir. 2017); *Bone v. Dunnaway*, 657 F. App'x 258, 262 (5th Cir. 2016)). However, as the Polkinghorns point out, "the amount of injury needed to meet the requirement of an injury in the context of an excessive force claim is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" Dkt. 15 (citing *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)).

Relying on the precedent laid out above, the Polkinghorns then detail the extent of David's injuries, including an "inflamed bump on his forehead" and ongoing psychological injuries that were allegedly caused by Liles's use of excessive force. *Id*. In arguing for the unreasonableness of Liles's use of force, the Polkinghorns cite nonbinding cases which purport to show that apparent mental illness or disability is a factor that must be considered when determining the reasonableness of force. *Id*. (citing cases from the Sixth and Ninth Circuit).

The Polkinghorns then go through the factors laid out in *Pratt* for determining whether the use of force was excessive, namely "(1) the severity of the crime, (2) whether the suspect poses an

immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest in flight." Dkt. 15 (citing *Pratt*, 822 F.3d at 181 (5th Cir. 2016)).

In support of the first two factors, the Polkinghorns assert that there is a genuine issue of material fact as to whether David's actions constitute a crime and that there was no evidence that David was a threat to the safety of others or Liles when she approached him. Dkt. 15.

In analyzing the third factor, the Polkinghorns use two cases to illustrate the use of excessive force: *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000), and *Trammell v. Fruge*, 868 F.3d 332 (5th Cir. 2017). *Goodson* concerned a suspect whose shoulder was broken after being tackled by police officers. *Goodson*, 202 F.3d at 733. The Fifth Circuit ultimately reversed the grant of qualified immunity. *Id.* at 741. However, unlike the present case, the holding in *Goodson* hinged on the lack of reasonable suspicion or probable cause. *Id.* at 739–40. No such claims are made in this case. Additionally, both parties in *Goodson* disputed "virtually every aspect" of the interaction. *Id.* at 733. The parties in this case are largely in agreement as to the underlying facts of the interaction.

*Trammell* involved a hearing-impaired motorist who was tackled and injured during a traffic stop. *Trammell*, 868 F.3d at 337–38. The Polkinghorns cite the court's holding that "'the speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need.'" Dkt. 15 (quoting *Trammell*, 868 F.3d at 342). Only three seconds had elapsed between the officer's request that the driver place his hands behind his back and when the officers tackled the driver. *Trammell*, 868 F.3d at 342. Finally, the Polkinghorns use both *Goodson* and *Trammel* to argue that since David's mental disability "should have been immediately apparent" and "less than

7

three seconds elapsed before [Liles] grabbed [David]," the force used was objectively unreasonable. Dkt. 15.

**B.     The Law**

It is important to first note that the only issue in dispute is the reasonableness of the force used by Liles. In a motion for summary judgment based on qualified immunity, the burden rests with the plaintiffs to allege the violation of a constitutional right and then show that 'the right was clearly established . . . in light of the specific context of the case.'" *Pratt*, 822 F.3d at 181. This is a fact intensive inquiry that requires careful attention to the circumstances of the case. *Id.*

  **1.     The Injury**

As the Polkinghorns state in their response, "the amount of injury needed to meet the requirement of an injury in the context of an excessive force claim is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" Dkt. 15 (quoting *Ikerd*, 101 F.3d at 434). While this standard can facilitate the finding of excessive force in instances of relatively minor injuries, it can also preclude the finding of excessive force for serious injuries or even death if the need is great or the force used is nonlethal. *Carroll v. Ellington*, 800 F.3d 154, 178 (5th Cir. 2015). *Carroll* involved the death of a man with paranoid schizophrenia who failed to comply with the orders of officers and was subsequently stunned with a Taser, hit with a baton, and held down. *Id.* at 163–65. Nonetheless, the court granted the officers qualified immunity based on the plaintiff's failure to comply with verbal commands and the defendants' use of nonlethal force. *Id.* at 176. Additionally, the *de minimis* standard for injuries resulting from excessive force laid out in *Baldwin* and cited by the Polkinghorns is related to the Eighth Amendment prohibition against cruel and

unusual punishment, not the Fourth Amendment prohibition against unreasonable seizures. *Baldwin*, 137 F.3d at 839.

Even accepting the Polkinghorns's account of David's injuries, the injuries alone do not establish excessive force. The court must look at the objective reasonableness of the force.

### 2. Reasonableness

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

The following three factors have traditionally been used to determine the reasonableness of force: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempt to evade arrest by flight." *Pratt*, 822 F.3d at 181. With respect to the first factor, Liles argues that the potential striking of Liles ("I will beat you") would constitute an assault. Dkt. 8. The Polkinghorns argue that David never struck Liles and merely pulling his hand away does not constitute an assault or by any means a severe crime. Dkt. 15.

The Fifth Circuit does not require that an actual crime be committed for this factor to weigh in favor of the defendant; suspicion of a crime is enough. *See Darden v. City of Fort Worth*, 880 F.3d 722, 729 (5th Cir. 2018) (holding that probable cause that suspects were dealing drugs was enough to weigh this factor in favor of the officers); *Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017);

9

*Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (noting that suspicion of a serious crime would facilitate a greater need for force than a traffic violation). Under this standard, Liles's suspicion that David, through his words and actions, was about to commit an assault is enough to satisfy this factor. However, even if this factor weighed in favor of the Polkinghorns, the second two factors still weigh heavily in favor of Liles.

In *Poole v. City of Shreveport*, the court found that since the plaintiff's refusal to turn around and be handcuffed "posed an immediate threat to the safety of the officers," the use of force was not "clearly excessive." 691 F.3d at 629. Like the plaintiff in *Poole*, David actively resisted Liles's attempt to detain him. Dkt. 8, Appx. at 4–5, 11. In addition, the plaintiff continued to pose a threat to the safety of the defendant by head butting the defendant during her attempt to detain him. *Id* at 5. Furthermore, Liles had reason to believe that David was carrying a pocket knife at the time of the incident. *Id*. These facts are not disputed by the Polkinghorns and go far beyond what the court determined was an "immediate threat" in *Poole*. Dkt. 1; Dkt. 15.

Additionally, like the officers in *Carroll*, Liles used nonlethal force in an attempt to detain David. Dkt. 8, Appx. at 5; *see Carroll*, 800 F.3d at 176. The Fifth Circuit has held that "officers are trained to use nonlethal force to gain compliance if a subject actively resists arrest and does not comply with verbal task directions to get on the ground." *Carroll*, 800 F.3d at 174. The nonlethal force used in *Carroll* far exceeded the nonlethal force used in this case. *See id*. at 163–66. Nonetheless, the court in *Carroll* found that the force used was not excessive or unreasonable. *Id.* at 174–75. For this reason, the force used by Liles was not excessive under the circumstances as defined by Fifth Circuit law.

The two cases cited in the Polkinghorns' response differ from the present case in significant ways. *Trammell* involved a factual dispute as to whether the plaintiff was trying to flee or posed a danger to himself or others. 868 F.3d at 340–41. Both parties in this case agree that the plaintiff pulled his arm away from the defendant after she attempted to detain him. Dkt. 8. Appx. at 5; Dkt. 15. Additionally, the video clearly shows the plaintiff continuing to resist and even head butting the defendant. Dkt. 8, Appx. at 11. With regard to *Goodson,* the denial of qualified immunity was largely predicated on the officer's lack of reasonable suspicion or probable cause. 202 F.3d at 739–40. That is not in dispute here.

### 3. Mental Illness and Excessive Force

The Polkinghorns argue that any appearance of mental illness should be a factor in determining the reasonableness of force. Dkt. 15. In support of this position, the Polkinghorns cite several cases from the Sixth and Ninth Circuits. Dkt. 15. In *Griffith v. Coburn*, 473 F.3d 650, 658 (6th Cir. 2007), the Sixth Circuit held that "[t]he diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted." (citing *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004)).

Similarly, in *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001), the Ninth Circuit held that "[w]here it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining . . . the reasonableness of the force employed." No such standard has yet been adopted by the Fifth Circuit or the Supreme Court. However, even if the standard described above were adopted by the Fifth Circuit, it would not change the outcome of this case.

In both *Griffith* and *Deorle*, the officers had knowledge of the plaintiffs' mental illness or disturbance prior to arriving at the scene of the incident. *Griffith*, 473 F.3d at 652, *Deorle*, 272 F.3d at 1276. The court in *Griffith* reiterates that "[i]t cannot be forgotten that the police were confronting an individual whom they knew to be mentally ill or retarded, even though the officers may not have known the full extend of [his] autism and his unresponsiveness." *Griffith*, 473 F.3d at 658 (quoting *Champion*, 380 F.3d at 904).

This stands in stark contrast to the present case. According to both the Polkinghorns and Liles, Liles was not made aware of David's mental incapacity until after the incident. Dkt. 8, Appx. at 6; Dkt. 15. Ex. 1. Additionally, even if the court accepts the Polkinghorns' characterization of David's mental capacity, this does not automatically render Liles's use of force excessive or unreasonable. After all, Liles had no prior knowledge of David's mental state, nor did she have reason to believe that she was confronting someone with diminished mental capacity. *Id.* Liles was forced to make a split-second decision based on what she knew at the time in an effort to prevent a perceived immediate threat to herself or others. *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

## IV. CONCLUSION

The evidence presented by the Polkinghorns fails to show that Liles violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pratt*, 822 F.3d at 180. Additionally, the Polkinghorns have failed to show that Liles acted unreasonably or used excessive force. Accordingly, Liles is entitled to qualified immunity, the motion for summary judgement is GRANTED, and the Polkinghorns' claim is DISMISSED.

Signed at Houston, Texas on June 6, 2018.

_____
Gray H. Miller
United States District Judge